Oneida General Term.    September, 1849.    *C. Gray, Pratt,*
*Gridley, and Allen,* Justices.

## Bliss and others, executors of Sheldon, appellants, *vs.* Sheldon, respondent.

Under the third subdivision of the first section of the title of the revised statutes
   respecting surrogates' courts, a surrogate has plenary power to control the con-
   duct of executors and administrators.

The words of the subdivision are directly applicable to a case in which an exec-
   utor persists in exercising the functions and discharging the duties of his trust
   erroneously, or irregularly.  And any person who suffers an injury by the
   erroneous action of an executor, in his proceedings in the surrogate's office,
   may lawfully call upon the surrogate to control his conduct.  *Per* Gridley, J.

If executors have filed an inventory of the personal estate of their testator, with-
   out setting off any part of the property to the widow, as exempt articles under
   the provisions of the revised statutes or of the act of 1842, and have converted
   into money all the articles contained in the inventory, the surrogate has the
   power to order them to pay to the widow a sum of money, in lieu of what she
   was entitled to receive under the exemption laws.

The surrogate has the power to decide upon, and direct, the allowance of any
   sum, within the limit (of $150) prescribed by the statute.  And where it does
   not appear that he has exceeded his jurisdictional power, the exercise of his
   judicial discretion will not be revised, on appeal.

Where a man, in contemplation of marriage, agrees to make a settlement on his
   wife, upon his death, in consideration of which she agrees to relinquish her
   rights in his property after his decease, and he dies without having made the
   settlement, the widow is not barred of any rights which she might have assert-
   ed if no such agreement had been executed.

She may therefore claim the exempt articles of personal property given to a widow
   by the statute.

What amounts to evidence of an election by a widow to abide by an ante-nuptial
   agreement; and how far such an election, if made, is binding upon her.

Appeal from an order of the surrogate of the county of
Oneida.   The facts are stated in the opinion of the court, and
need not be repeated.

*T. H. Flandrau,* for the appellants.

*S. B. Garvin,* for the respondent.

Bliss *v.* Sheldon.

*By the Court,* GRIDLEY, J.   This is an appeal from an order made by the surrogate of Oneida county, upon an application by the respondent to control the conduct of the executors of her husband's estate, in relation to the inventory which they had filed.   They had filed an inventory without setting off any part of the property inventoried, to the widow, as exempt articles, under the provisions of the revised statutes, or of the act of 1842.   It appeared before the surrogate that the executors had disposed of, and converted into money, all the articles contained in the inventory, and the surrogate therefore ordered them to pay to the widow the sum of $150 in lieu of what she would be entitled to receive under the aforesaid exemption laws. The executors have appealed from the decree of the surrogate, and on the appeal have raised several questions which we propose to consider in their order.

I. It is suggested here, for the first time, that the surrogate had no jurisdiction to entertain the application and to make the decree.   The powers conferred upon the surrogate are enumerated in the first section of the first title of chapter second, part third, of the revised statutes.   (2 *R. S.* 154.)   Among these powers we find the following :  Subd. 3d.  To direct and control the conduct, and settle the accounts of executors and administrators; subd. 6th.  To administer justice in all matters relating to the affairs of deceased persons.

Now under the third subdivision the surrogate has plenary power to *control the conduct of executors and administrators.* The words are *general,* and would seem to be directly applicable to a case in which an executor persists in exercising the functions and discharging the duties of his trust erroneously, or irregularly.   And any person who suffers an injury by the erroneous action of the executor in his proceedings in the surrogate's office, may lawfully call upon the surrogate to control his conduct.   If, in making out an inventory, the executors should adopt an erroneous principle, it seems to us that he may be controlled by the surrogate.   In the case before us, assuming that there should have been set off to the widow a certain portion of the inventory, which by law is not regarded as assets,

and which the executors should not dispose of as such, it is difficult to say that the case does not fall directly within the spirit as well as the words of the statute. The inventory contained an item of $175 in bank bills, which, or some part of which, the executors might have set apart to the use of the widow. Now, granting that the executor ought to have done this, but erroneously omitted to do it, we can see no assumption of an unauthorized power in the surrogate in decreeing that it should now be done. The order appealed from does *this*, and *no more.* It merely orders the executors to pay over $150, in lieu of the exempted property, which might have been, so much of the $175, the only part of the inventoried property which had not been disposed of. In doing this it is true that the surrogate has in effect decided between the conflicting claims of the executors, who represent the next of kin and the legatees, and the widow ; but by the sixth subdivision of the section before cited, the surrogate has the power to administer justice in matters of this nature. We are therefore of the opinion that the surrogate had the power to make the order in question.

II. It is suggested that the order is erroneous in awarding too large an amount. By the second section of the act of 1842, (*chap.* 157,) the amount of property set apart for the widow, might have been $150. And it is laid down in Dayton's Surrogate, that it is the *duty* of the executor to set apart for the widow, articles to the amount of $150, and that the discretion vested in the appraisers, by the act, has no reference to the amount in value of the articles set apart, but only to the particular articles to be selected from the inventory. But whether this be the true construction of the act or not, we think that the surrogate had, from the very nature of the case, the power to decide upon and to direct the allowance of any sum within the limit prescribed by the statute. We would not revise his judicial discretion when it does not appear that he has exceeded his jurisdictional power.

III. The principal question involved in this appeal arises upon the effect of the ante-nuptial agreement executed by the respondent and her deceased husband, shortly previous to the

Bliss *v.* Sheldon.

celebration of their marriage. That agreement recited that a marriage was contemplated between the parties; and then proceeds to state that the deceased covenanted and agreed to and with the respondent, that if the intended marriage should take effect, and in the event of his death before that of the respondent, he would, *by his last will and testament in writing*, or *otherwise*, give and assure unto the respondent the sum of fifty dollars yearly, each and every year during her natural life; and the use and occupation of one square room and bedroom adjoining the same in the south part of his dwelling house, and a garden spot on the premises, and all the household furniture which the respondent should have and bring with her at her marriage. The agreement then proceeds as follows: "The above grant is to be received in lieu of dower or any other portion of the said Ebenezer Sheldon's property after his decease."

The counsel for the appellants has submitted a very able and learned argument to show that this ante-nuptial agreement operated as a legal bar to the respondent's right to the exempt articles given to the widow by the statute. In the view which I have taken of this case, it is not necessary to question this proposition. The agreement may be admitted to be a valid contract, and binding on both parties. But it clearly is an instrument by which the relinquishment by the respondent of her right in the property of the deceased, would depend upon the performance by him of the covenants, into which he had entered on his part. It was not the executory covenant of the deceased which was to be in lieu of dower, but it was the grant or assurance, conveying to her as a vested right, her annuity, and a life estate in the house and garden and a title to the household furniture. When a man in contemplation of marriage agrees to make a settlement on his wife, in consideration of which she agrees to relinquish her rights in his property at his decease, and he fails to make the settlement, the widow is not barred of any right which she might have asserted, if no such agreement had been executed. (*See Clancy's Rights of Married Women, p.* 103.) The case now under consideration is not to be distinguished in principle from that. The deceased did not per-

form his covenant. He made his will by which he provided for the payment of her annuity of fifty dollars, not *for life*, but only while she *should remain his widow*. The residue of his covenant was wholly unperformed; and by disposing of the entire remainder of his property, he rendered it impossible for his executors to perform it; even if that would operate as a performance by himself. But it would not. When the deceased died without "giving and assuring" to his widow "the annuity for life," together with the real estate and furniture, which he had covenanted to do, she was released from all her engagements contained in the agreement, and that instrument thenceforth formed no bar to the rights she would otherwise possess.

It is said, however, that on the hearing before the surrogate the respondent admitted that she was in possession of certain property, under the contract, and that she is therefore estopped from denying that it is binding on her. This fact was charged in the petition of appeal, and the respondent answered that she had not sufficient information as to what was admitted on the hearing before the surrogate, to admit the fact as charged. The surrogate has returned, that it was admitted that the respondent lived in the house of the deceased, and had a small amount of property of her own, principally of that which she owned before her marriage; and that she claimed and was in possession of a part of the house and land, together with said personal property, under the ante-nuptial contract; to which claim the executors assented, though the exact quantity and location of the land to be set apart to her had not been agreed upon. Now there are many reasons why the surrogate was justified in holding that the respondent was not estopped from insisting on the invalidity of the agreement. (1.) It no where appears that she had any knowledge that the deceased had not by his will or otherwise assured to her the property he had contracted to give her. (2.) If she *did* know that he had not performed his part of the agreement, it does not appear that she was aware of her legal rights, and we think that the facts to which we shall hereafter advert render it quite certain that she was not. (3.) It is clear from the admission that the rooms

and garden spot have not yet been set off to her; and her possession of the small portion of personal property she brought there, and her residence in the house of the deceased, furnish no evidence of an election to abide by the agreement. (4.) Her election to abide by the agreement would be unavailing. The executors have no power to execute it on the part of the deceased. They can only execute the will, and that has disposed of the property, which was to have been assured to her, to certain devisees named therein. (5.) The *devisees* have no power to consent and authorize the executors as their agents to assure to the respondent the real and personal estate in question, because *four* of the parties interested in the devise are *infants*.

It follows that any election of the widow to take what was agreed to be settled on her, and to abide by the agreement, must of necessity be defeated by the impossibility that her rights under the agreement can be assured to her. If she has even so agreed, the considerations I have alluded to, show that she is entitled to her *locus penitentiæ*, when it turns out that the other part of the agreement can not be performed.

The decree must be affirmed, with such costs as are given by the code.

Decree affirmed.

---

SAME TERM. *Before the same Justices.*