KIRBY and ROBBINS, appellants, *vs.* CARPENTER and others, respondents.

Where a surrogate's return upon appeal, assumes to state what the facts are in regard to a claim against the estate of a decedent, without stating what the evidence of those facts was, the court will presume that such facts were legally ascertained by the surrogate, upon sufficient evidence.

If the fact is otherwise, the respondent may compel a further return from the surrogate, showing whether any and what evidence was given in support of the claim.

On the distribution of the moneys arising from the sale of the real and personal estate of a decedent, debts owing by him as a member of a copartnership, should not be placed by the surrogate on a par, or in the same class, with debts owing by the decedent individually; but should be postponed till the individual debts are paid.

And where the surviving partners, after the death of the deceased, pay debts owing by the partnership, their relation to the separate estate of the decedent is not thereby changed. They stand in the place of, and represent, the creditors whose debts they have paid; who can only come in for a share of the assets of the estate, after the individual debts shall have been paid.

On the same principle, the claims of individual creditors are entitled to priority over those of the surviving members of the firm, growing out of the partnership transactions.

*Payne* v. *Mathews*, (6 *Paige* 20,) so far as it conflicts with this decision, disapproved.

APPEAL from a decree of the surrogate of the county of Monroe. The decree appealed from was made on the 17th day of December, 1846, in the matter of the distribution of the money arising from the sale of the real and personal estate of Jeffries Hallowell, late of the city of Rochester, deceased. It stated that the moneys arising from the sale of the real estate of the deceased amounted to the sum of $605, which had been paid into court by Edmund P. Willis the administrator and Sarah L. Hallowell the administratrix; and that the sum of $2576,44, proceeds of the personal estate, had also been paid into court by them. The decree then ordered that the sum of $133,42 be paid from the proceeds of the sale of the real estate to Sarah H.

Hallowell, widow of the deceased, in lieu of her dower, &c. That $41,60 be paid to the administrator and administratrix for their expenses of the sale of the real estate, and $30,17 to the surrogate for his charges, &c. leaving of the proceeds of the sale of real estate $399,81 to be distributed. That after paying the expenses of administration there remained in court, of the proceeds of the personal estate, the said sum of $2576,44 also to be distributed. The two sums in court, to be distributed, amounting to $2976,25. The decree also stated that the individual debts of the deceased amounted to $5098,54. The decree then stated that William James and John James were creditors of the deceased, and mentioned the amount owing to them and the other creditors respectively, and ordered that the moneys in court be paid out to them in ratable proportions, which would entitle them to be paid at the rate of 58 cents and 3-10ths of a cent upon the dollar, &c. The decree then stated that the deceased, at the time of his death, together with the appellants Willet S. Robbins and Edmund Kirby, were indebted jointly as partners in the sum of $585,73, and that the latter had paid, since the death of Hallowell, to the creditors of the copartnership $220 in full satisfaction thereof, and directed that one half of that sum, to wit, the sum of $110, be allowed to said Kirby and Robbins as survivors, &c. and that the same be paid to them out of any surplus there might be after payment of all the individual debts of the deceased, with interest from the first of March, 1846. The decree also recited that the said Kirby and Robbins as such survivors as aforesaid, had an unliquidated account of $3657,90, which they claimed as a balance due them from the estate of the deceased, arising out of their joint business, which account was made up, among other things, of joint debts paid by them since the death of Hallowell, and contained credits of property received by them since the death of Hallowell, belonging to the copartnership. And it appearing that the individual debts of the deceased would more than absorb the money in court, it was ordered that the said account of Kirby and Robbins, as such survivors, be allowed and paid out of any such surplus money there might be after the pay-

Kirby *v.* Carpenter.

ment in full of all the individual debts of the deceased. The surrogate's return stated that on the 3d of September, 1846, he made an order requiring notice to be given, &c. that the distribution of the moneys, &c. would be made according to law at his office in Rochester on the 29th of October then next, which notice was duly published. On the said 29th of October the administrators and creditors of the estate appeared, when the hearing of the matter was adjourned from time to time until the 17th of December, 1846, and on that day the order or decree of distribution was made as above. The return detailed particularly all the proceedings had by and before the surrogate, touching the distribution; &c. It showed that the deceased, Jeffries Hallowell, and the appellants were, at the time of the death of Hallowell, and had been for some time, copartners in the business of buying and selling produce, in which, by the terms of the partnership the said Hallowell was to share one half of the losses and one half of the profits, and the appellants were in like manner to share one half of the losses and one half of the profits. It also appeared by said return that the claims so allowed by the surrogate in favor of the appellants, arose out of the partnership transactions aforesaid. The petition of appeal alledged for error in the decree, that the claims, although allowed and established by and before the surrogate, were, by the decree, postponed to the debts owing by the deceased individually. That the appellants should have been permitted to come in and share equally with the other creditors of the deceased. None of the persons who were intended by the petition of appeal to be made parties respondents, answered the same, except William and John James, who, by their answer, denied that the appellants were creditors of the estate of said Hallowell, or that any proof whatever was given or adduced on the hearing before the surrogate, by the appellants, in support of their said claim.

*E. Darwin Smith*, for the appellants.

*E. Griffin & D. Wood*, for the respondents.

Kirby *v.* Carpenter.

*By the Court,* WELLES, J. With respect to the question whether the appellants' demand was established by sufficient evidence before the surrogate, it is to be remarked that the return assumes to state what the facts were in regard to the claim. It does not state what the evidence of those facts was. We are to presume that they were legally ascertained by the surrogate, upon sufficient evidence. If it were not so, the respondents could have obtained a further return from the surrogate, showing whether any and what evidence was given in support of the claim. (*Halsey* v. *Van Amringe and wife,* 6 *Paige,* 12.) The claims of the appellants, as appears by the decree and also by the return, consisted of two demands, one of $3657,90, and the other of $110. The following is what the return states in relation to them. " Messrs. Kirby & Robbins presented for allowance a claim against the said estate—the balance of an unliquidated partnership account, and three notes of hand, and two other claims—which claims I allowed, and which must give precedence *to* individual claims, and placed them in the second class of debts (see schedule *A*) upon the following facts. The unliquidated account of Kirby & Robbins of $3657,90 was against Jeffries Hallowell, deceased, in his individual capacity, and not a copartnership account, as their counsel alledges. The facts in the case are these, In 1840, Messrs. Kirby & Robbins resided in the city of New-York, and were engaged in business as commission merchants, Jeffries Hallowell, the deceased, resided in Rochester, and was engaged in general produce business, milling, &c. In that year Kirby, Robbins and Hallowell entered into a verbal agreement or arrangement as follows : Hallowell was to purchase wheat, flour, oats, butter, and all other produce on which he might believe money could be made, on joint account. Hallowell, to raise the necessary means and funds to make the purchases, and transact the business, was to draw his drafts in his private name upon time, on Messrs. Kirby & Robbins, New-York, and procure their discount at the banks in the city of Rochester. He was to sell the property where he thought best, or ship the property to New-York to Messrs. Kirby & Robbins for them to sell. Hallowell

Kirby *v.* Carpenter.

was to share one half of the losses and one half of the profits, and Messrs. Kirby & Robbins the same, each receiving no compensation for personal services in the transaction of the business. The joint business had been settled up to February, 1843. Under the foregoing arrangement a large business was transacted and was continued until the death of Hallowell. The unliquidated account presented is made up of the profits and losses, the payment of a portion of the drafts drawn, the payment of debts contracted, in the business, by Hallowell, and the property on hand at the death of Hallowell, &c. The other demands presented by Messrs. Kirby & Robbins are as follows." The return then set forth at length two accounts against the estate of Jeffries Hallowell, one in favor of Eli Hart, amounting to $186,97, and one in favor of E. D. Ely for $65 ; and then proceeded as follows : " And three promissory notes, each for one hundred dollars, payable one year after date to the order of C. Frost & Co. at the Rochester City Bank, and dated Dec. 6th, 1843, Jan. 16th, 1844, and March 4th, 1844, respectively. These demands Messrs. Kirby & Robbins took up by the payment to the holders of the sum of $220, as follows :

The demand of Eli Hart & Co. at  - - - - - - - $100
    "      "      E. D. Ely for damages, - - - -    20
Three notes of $100 each to C. Frost & Co.  - - -  100
                                                  ——————
                                                  $220"

The above accounts in favor of Hart and Ely, and the notes to Frost & Co. must be the joint debts owing by Hallowell, Kirby & Robbins referred to in the decree as amounting to $585-73, which the appellants had satisfied by paying $220, one half of which was allowed as a debt due the appellants from the estate of Hallowell. The difference in the aggregate amounts would probably be accounted for by computing interest on the three notes to Frost, &c.

Ought the claims of these appellants, or any part of them, to have been placed by the surrogate on a par, or in the same class, with debts owing by the decedent individually, in the distribution of these moneys ?

Kirby *v.* Carpenter.

It is a settled rule of equity, that in marshalling the assets of a deceased partner, the partnership property is to be first applied to the payment of partnership debts, and that until such debts are all paid no creditor of the individual partner is entitled to any share in the assets of the partnership. Also, that the separate creditors of the deceased partner are entitled to priority over the creditors of the partnership, in respect to the separate estate of the deceased partner. (*Payne* v. *Mathews,* 6 *Paige,* 20. *Buchan* v. *Sumner,* 2 *Barb. Ch. Rep.* 197. *Story on Part.* §§ 363, 364, 365, 376. *Story's Eq. Jur.* § 675: *Jackson* v. *Cornell,* 1 *Sandf. Ch. Rep.* 348. 3 *Kent's Com.* 264, 265, 3*d ed.*)

It is equally well settled that the partnership effects are liable to each member of the firm, for the purpose of equalizing and adjusting their claims in relation to the partnership fund. That the claim of one member of a firm upon the firm, arising out of partnership transactions, such as the payment of partnership debts, investment of more than his share of capital, &c. entitles such partner to priority in the distribution of the partnership funds, over a creditor of an individual partner. In such case the member of the firm paying the debts or investing more than his share of the capital, becomes a creditor of the firm. And by the same rule of reciprocity, a creditor of an individual member of the partnership is entitled to preference, as regards the separate property of such partner, over such creditor of the firm. (*Buchan* v. *Sumner,* 2 *Barb. Ch. Rep* 197. *Taylor* v. *Fields,* 4 *Vesey,* 396. *Ex parte King,* 17 *Id.* 115. *Nicholl* v. *Mumford,* 4 *John. Ch.* 522.)

Testing the present case by these rules, it is clear that the appellants were properly postponed to the individual creditors of the decedent. Their relation to his separate estate is not changed by their paying debts against the firm since the death of their partner. They stand in the place of, and represent, the creditors whose debts they have paid, who can only come in for a share of the assets of the estate after the individual debts shall be paid. And on the same principle the claims of individual creditors are entitled to priority over those of the surviving mem-

bers of the firm growing out of the partnership transactions, such as this claim of $3657,90 appears to have been.

The case of *Payne* v. *Mathews*, (*supra*,) is in some respects opposed to such application of the rules above stated. In that case Chancellor Walworth, after fully recognizing the rule that joint creditors of a copartnership are entitled to payment out of the property and effects of the firm, in preference to the separate creditors of the individual copartners, and that such separate creditors have a corresponding right to priority in payment out of the individual estate of the copartners, in case of the death or bankruptcy of the latter, over the partnership creditors, held that a balance due a surviving copartner on account of the co-partnership transactions was entitled to come in equally with creditors of the individual deceased partner in the distribution of his individual estate. He places the decision of the question upon those sections of the revised statutes which direct in seve-ral cases the distribution of the estates of deceased persons. (2 *R. S.* 87, § 27 ; 112, § 73 ; 453, § 37.) He remarks that "the principle adopted by the revised statutes is, that equality among creditors is equity, in relation to the distribution of the estate of an insolvent decedent, except in those cases where the creditor had proceeded to judgment against the decedent before his death."

If it be true that the statutes referred to were intended to have any influence upon the rules in question, it seems to me that they amount to an abolition of the rules ; at least so far as respects their reciprocity. If the statute concerning the duties of executors, &c. in the payment of debts and legacies (2 *R. S.* 87, §§ 27, 28) is to be literally observed, an executor or adminis-trator of a deceased partner has only to inquire after creditors by "recognizances, bonds, sealed instruments, notes, bills, and unliquidated demands and accounts," to ascertain those belong-ing to the fourth class mentioned in the statute. And he is not to discriminate whether they were partnership or individual creditors. He is only to ascertain whether the decedent was liable, and the claimant's creditors, coming within the descrip-tion of the fourth class, and the debt must be paid ratably with any others of the same *statute class.* No matter if a solvent

firm, of which the decedent died a member, is also liable for the same debt. A creditor, in such a case, would be under no obligation to exhaust his remedy upon the partnership effects before coming in for his share of the individual property of the deceased partner.

I do not believe the statute requires such a construction, or was intended to have such an effect. It provides for the order of payment of "*the debts of the deceased,*" dividing them into four classes; and no violence will be done to its language by understanding its provisions as subject to the existing rules in equity in relation to the marshalling of the assets of deceased partners and of the partnership estate. The rules referred to have been considered in force as much since the revised statutes took effect as before. They are rules of equity which were never intended to be disturbed or affected by the statute. Before the revised statutes a different rule of distribution prevailed, and which, if literally observed and applied, in all cases, would conflict with the above rules of equity as much as the one established by the revised statutes.

I think that part of the decree of the surrogate, appealed from by the appellants, should be affirmed with costs.

Decree accordingly.

---

New-York General Term, November, 1849. *Jones, Edmonds, and Edwards,* Justices.