WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.
·        February, 1879.

## HARRIS *v.* MEYER.

*In the matter of the estate of* HENRY J. MEYER, *deceased.*

Under the provision of the Revised Statutes authorizing the Surrogate to give preference, in the distribution of the funds of an estate, to rents due or accruing upon leases held by the testator or intestate (2 *R. S.,* 87, § 30), it is a condition to the exercise of this power that facts be laid before him showing explicitly that a benefit will thereby accrue to the estate, and a general allegation to this effect will not suffice.

Where the testator died holding leases upon which arrears of rent were due, and there were also certain sums due him for storage of goods on the

property leased,—*Held.* that these sums were assets in the hands of the executors, and must be distributed according to the statutory provision (2 *R. S.*, 87, § 27), and that the Surrogate had no jurisdiction to direct their application to liquidate the arrears of rent as a preference over ordinary debts due from the estate, in the absence of clear proof that the interests of the estate demanded such action.

*Held,* also, that if the accrued profits were not assets, but were to be taken to belong to the landlord as rents, then the Surrogate would have no jurisdiction to direct their disposition.

Surrogates derive their authority from the express terms of the statute and take no power by implication.

AN application having been made by the executors for a final accounting, Catharine M. Harris presented a petition showing that, in May, 1875, the testator leased from the rector, church wardens and vestrymen of Trinity Church, in New York, certain premises, known as Nos. 437, 439 and 441 Greenwich street, for the term of twelve years, with renewals, at the yearly rent of $2,400, payable semi-annually ; that in October, 1877, the testator gave to her a bond, accompanied by a mortgage on said premises, to secure the payment of the sum of $15,000 ; that the buildings on the premises were occupied by the testator as bonded warehouses, in which he stored large quantities of goods for pay ; that the testator died on the 4th day of November, 1877, at which time a large sum of money was due for storage, at least equal to the amount of rent due at the testator's death ; that the executors of the testator entered into possession of said premises and collected the amounts so due for such storage, which they have neglected and refused to apply toward the payment of the ground rent; that the rector, etc., of Trinity Church threaten to re-enter by reason of the non-payment of said rent, and thus terminate the lease, to the injury of the petitioner

to the extent of the amount of her said bond and mortgage ; that the lease is a valuable one, and if the sum so collected were paid to the landlord, would be worth many thousands of dollars, and would be preserved to the estate of said Meyer and to the benefit thereof. On this state of facts a prayer was based, asking for an order directing the executors to show cause why they should not be required to pay the ground rent, "which has been produced by and from the use and occupation of said premises prior to November 1, 1878, and which has been collected by them from said premises, and to preserve said lease and its renewals, for the benefit and preservation of said estate and to protect the lien of your petitioner thereon."

The executors filed an affidavit in reply to the petition, in which it was alleged that the testator also occupied as bonded warehouses, in addition to those specified in the petition and adjoining thereto, Nos. 39, 41, 43 and 45 Vestry street; that the earnings at the different buildings were unequal in amounts; that the accounts thereof were kept together, and that it was impossible to separate them so as to show the several amounts realized at the stores on Greenwich street and those on Vestry street, but asserted that the earnings at the former were much less than at the latter.

It was agreed that the estate was largely insolvent.

R. D. HARRIS, *for the petitioner.*

It was the duty of the executors to assume control of the premises and to receive the profits thereof.

(Miller *v.* Knox, 48 *N. Y.*, 232, 237.)  Having received the profits of the premises, it was the duty of the executors to pay the amount, to the extent of the rent, to the landlord, and they are personally liable therefor. (Miller *v.* Knox, *above;* Remnant *v.* Bremridge, 8 *Taunt.*, 191; Rubery *v.* Stevens, 4 *B. & Ad.*, 241; Tremeere *v.* Morison, 1 *Bing., N. C.*, 89.)  Nothing is assets in the hands of the executors except the profits above the rents.  (Hargreave's case, 5 *Coke*, 31, *b.*)

The Revised Statutes give power to the Surrogate " to direct and control the conduct of executors and administrators." (*Dayton's Surr.*, 25; Bliss *v.* Sheldon, 7 *Barb.*, 152; Seaman *v.* Duryea, 10 *id.*, 523); and he has equity jurisdiction.  (Kirby *v.* Carpenter, 7 *Barb.*, 373.)  If the fund be assets, then the Surrogate has jurisdiction, and must direct that it be applied to the person entitled to it.  If it be not assets, then it should be taken from the account of the executors, and they should apply it to the rent.

A. B. TAPPEN, *for the executors.*

The profits of the storage business is not rent or income, in any sense.  The goods made in a factory and found there at the death of the manufacturer cannot be seized on any similar claim, on the ground that they are the profits or income of the factory.  If the petitioner is right, then the money left by the testator in bank, which was the proceeds of storage bills, can be kept from the general creditors and disposed of as income.  The Revised Statutes expressly declare that rent accrued before death shall be personal estate, and further, that debts and accounts due the deceased

shall be deemed assets and be included in the inventory.

L. A. GOULD, *for the Penrhyn Slate Company, a creditor.*

"Rent" is usually a sum of money, but may consist of services or products of the soil, paid for the use of land and its appendages. (2 *Bl. Com.*, 41; 1 *Hilliard on Real Prop.*, 227.) "Profits," when applied to realty, refers to and consists of the products of the soil, whether in the form of coal, metals, emblements or rents received for the same. (1 *Washb. on Real Prop.*, 384; 2 *Bl. Com.*, 41.) The realty was but an incident to the business.

All the cases agree, that if rents collected after decedent's death are to be set aside as a preferred fund, it must be done under 2 R. S., p. 87, § 30. There is no statute, nor any case reported, directing or authorizing the Surrogate to set aside as a preferred fund the rents and profits received by decedent prior to his death or collected, by his executors.

THE SURROGATE. — It seems to me clear that the fund in question is assets, to be distributed and disposed of as provided by law. Section 27, 2 R. S., 87, directs the executor or administrator to pay: 1st, debts entitled to a preference under the laws of the United States; 2d, taxes assessed before death; 3d, judgments and decrees against the deceased according to priority; and, 4th, all other debts. Section 30 authorizes the Surrogate to give preference to rents due or accruing upon leases held by the testator or intestate at the time of his death over debts of the

fourth class, whenever it shall be made to appear to his satisfaction that such preference will benefit the estate. The condition of this exercise of discretion on the part of the Surrogate is, that it shall be made to appear to his satisfaction that it shall be for the benefit of the estate. If he decide against granting the preference, then the landlord will stand in precisely the condition of any other creditor.

I understand the rents accrued since the death of decedent have been paid, and that the question here, therefore, concerns only those which were due at the time of his death. If the petitioner seeks relief under section 30, the statement of facts to show what benefit will enure to the estate by reason of the granting thereof is entirely insufficient. The mere allegation that the payment of the rent by the executors would be worth thousands of dollars to it, is but another way of saying it would be to the benefit of the estate. Facts should have been stated in detail, showing how the benefit would result. As I fail to discover, from the papers before me, any benefit to be derived to the estate from the payment of the rent, my duty is not to give the preference. Here, I think, my power in the matter ends.

It is insisted, however, that this court possesses equitable powers, and by invoking them the relief sought may be granted; and a *dictum* of Brown, J., in Seaman *v.* Duryea (10 *Barb.*, 523), is referred to, and Kirby *v.* Carpenter (7 *Barb.*, 373), and other authorities are cited to sustain this view. I had occasion to follow those cases in that respect in Timpson's Estate, (15 *Abb. Pr. N. S.*, 230), and in other instances;

but this court can only exercise these powers within the scope of its statutory jurisdiction. This was done in the case of Kirby v. Carpenter (above), where the Surrogate had jurisdiction to distribute the proceeds of real and personal estate among creditors and next-of-kin by statute; and this involved the doing of it according to their legal and equitable rights. So, if this fund be assets, I must proceed to distribute it as the legal and equitable rights of the parties may appear, having regard, nevertheless, to the mode of distribution pointed out by the statute. In short, the equitable power must, to permit its exercise, be one fairly and reasonably inferred from the general language of the statute, or necessary to accomplish its object. If it be not assets, then this court can exercise no control, legal or equitable, over it.

The power given "to direct and control the conduct of the executors and administrators" (subd. 3, § 1, 2 R. S., 220), will not warrant a Surrogate to make arbitrary orders regulating and controlling their con-duct, with or without application, unless it be in the cases specially pointed out in the statutes. This section expressly declares that the above power "shall be exercised in the cases and in the manner prescribed in statutes of this state." Surrogates take no power by implication.

If this court could exercise the general jurisdiction possessed by the Supreme Court, I am inclined to think the prayer of the petition could not be granted. But, lacking such power, it is needless to attempt to adduce any rule of law from the cases cited by the learned counsel, and would be, perhaps, justly regarded as, at least, improper.

The claim of the petitioner, that the profits of the warehousing business are rents belonging to Trinity Church, could only be maintained on the ground that they are not assets. It strikes me that if the executors came into possession of government bonds, and caused them to be inventoried, and a third party should claim them to be his, the case would be parallel. ·I have no power to try such a question. Marston *v.* Paulding, (10 *Paige*, 40.)

If, therefore, the petitioner deem her claim a just one, she must invoke the power of some tribunal having a general common law jurisdiction.

The prayer of the petition is, therefore, denied.