ORANGE COUNTY.—HON. R. C. COLEMAN, SURRO-
GATE.—January, 1886.

LOCKWOOD *v.* CARR.

*In the matter of the judicial settlement of the account
of* LEWIS E. CARR, *as administrator of the estate
of* CHARLES B. GRAY, *deceased.*

Any court may inquire into the jurisdiction of any other, where the
proceedings of the latter are brought before it by a party claiming the
benefit thereof.

2 R. S., 88, 89, §§ 36, 37, relating to a reference of a disputed claim
against a decedent's estate, making no provision for the adjudication
of any other matter than *the justice of the claim,* the referee has not
power to pass upon any questions except such as are incidental and
necessary to the determination of the main inquiry.

Upon the judicial settlement of the account of the administrator of the
estate of decedent, who during his lifetime was engaged in business in
partnership with another, one L. sought to procure payment, out of
the assets of that estate, of a demand representing moneys paid by her
as follows : (1) the amount of a note signed by each partner, and by
her as accommodation maker, for money borrowed by the firm and
used in their business ; (2) five other notes executed to her by the
partners, in their individual names, after dissolution of the firm, and
endorsed by her for their accommodation, the same being in renewal
of firm notes previously made to, and in like manner endorsed by her ;
all of which notes she was compelled to pay. A judgment of the
Supreme court, entered upon the report of a referee appointed under
the statute, had determined the right of L. to share, ratably with
the individual creditors of decedent, in the assets of the estate, which
were insufficient to pay both classes of claims in full.—

*Held,* that this determination was not binding upon the individual credit-
ors or the Surrogate's court ; that the instruments held by L. were
not enforceable against decedent's estate on the theory that they were
joint and several liabilities of the makers, but retained their original
character as evidences of partnership obligation ; and that the decree
should provide for the payment of the individual creditors in full, and
the distribution of the balance of the assets among L. and the other
firm creditors.

DECEDENT, previously to the year 1876, was a co-partner with one, Lockwood, during the continuance of which relation the firm borrowed $2,000, giving therefor a joint and several note, signed by each partner in his individual name, and by the mother of Lockwood, as makers. This note the latter was subsequently obliged to pay, for which payment she was never reimbursed by the firm. At various times, while the partnership was in existence, she also endorsed notes, for their accommodation, which were discounted by the banks, and some of which were, from time to time, renewed, she, however, being ultimately compelled to pay five of them. Upon the judicial settlement of the account of the administrator of decedent's estate, Mrs. Lockwood presented a claim for the amount paid by her in respect of these six notes.

L. E. CARR, administrator, in person.

C. C. CUDDEBACK, for Sarah Lockwood.

O. P. HOWELL, and JOHN W. LYON, for creditors.

THE SURROGATE.—The estate for distribution among the creditors amounts to about $2,400. There are two classes of creditors: 1st, those whose claims are conceded to be individual, and which amount to about $2,100, and, 2nd, those who are alleged to be creditors of the firm of Gray & Lockwood, of which the deceased was a partner, whose claims amount to over $4,000. The individual creditors seek to exclude the firm creditors from participation in the assets of the estate, until they have been paid in full; while the

firm creditors claim to be entitled to share, *pro rata,*
with the individual creditors in the distribution.

The matter has been complicated by a judgment of
the Supreme court, entered upon the report of a re-
feree in a reference under the statute, relating to
disputed claims.    The greater part of the so-called
firm debts are held by a Mrs. Lockwood.    Her claim
was disputed by the administrator, and the claim was
referred.    On this reference the question of Mrs.
Lockwood's right to share equally with other creditors
in the distribution of the estate was submitted to the
referee, and passed upon by him.    He decided that
she was.    It is, however, now claimed that that decis-
ion is not binding upon the other creditors of the es-
tate.    I will, therefore, direct my attention first to
that question.

The provision in the judgment is very general in
its terms, but when taken in connection with the opin-
ion and report of the referee, it is clear that the Su-
preme court, by the judgment, directs the payment of
Mrs. Lockwood's claim *pro rata* with those of individ-
ual creditors.    The proceeding in which that judgment
was rendered is a statutory one, and only such mat-
ters could be submitted for determination as are pro-
vided for by the statute.    "If the executor or admin-
istrator *doubt the justice* of any claim," then provision
is made for a reference, "and the judgment of the
court thereupon shall be valid and effectual in all re-
spects, as if the same had been rendered in a suit
commenced by the ordinary process" (2 R. S., 88, 89,
§§ 36, 37).    No provision is made by the statute for
determination of any other matter than the justice of

the claim ; anything else, to be properly passed upon, must be incident and necessary to the determination of that question.

In this case, the referee had to determine whether Mrs. Lockwood's claim was a just one against the estate of Charles B. Gray, deceased; and, to do that, he had to ascertain whether this claim was against Charles B. Gray individually, or against the firm of Gray & Lockwood; and if the latter, then, that there were no partnership assets or solvent surviving partner so as to make it a claim in equity against the individual estate of the deceased partner.   The referee, however, not only did all this, but he also decided how the claimant should share the estate with the other creditors.   Now, did the administrator in that proceeding represent the individual creditors, so as to give the court jurisdiction over them ?   If he did, did the referee have jurisdiction of the subject matter, so as to have the power to determine the rights of the different classes of creditors in the distribution of the assets ?   If the answers to these questions are in the affirmative, then the judgment is conclusive, and cannot be questioned on this settlement; the only means of review being by appeal (Fisher v. Hepburn, 48 *N. Y.*, 53).

But a court may enquire into the jurisdiction of any other court where the proceedings of the latter are relied upon, and brought before the former by the party claiming the benefit of such court's action. " Where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judg-

ment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments are nullities" (Elliott v. Peirsol, 1 *Peters*, 511; Wilcox v. Jackson, 13 *Peters*, 511). "Jurisdiction is the power to hear and determine the subject matter in controversy between the parties to the suit" (State of R. I. v. State of Mass., 12 *Peters*, 718). "Jurisdiction does not relate to the rights of the parties, as between each other, but to the power of the court" (Peo. v. Sturtevant, 9 *N. Y.*, 263).

The Supreme court would have had jurisdiction, *in an action* brought for that purpose, to have determined the rights of the parties on a settlement in this estate; but I do not think it has, in such a proceeding as the one in which this judgment was entered. Mowry v. Peet (88 *N. Y.*, 456) is a case showing the limited power of the court in such proceedings. There, judgment had been entered in favor of the administrator, against the claimant, for the excess of the claim of the deceased over that of the claimant. It was held not to be within the scope of the statute, and that neither referee nor court had power to render such affirmative relief.

I will, therefore, now consider the nature of Mrs. Lockwood's claim. Upon the Farnum note of $2,000, Mrs. Lockwood was an accommodation maker, or surety. She signed as joint maker with Gray & Lockwood, for their accommodation, and with a full knowledge of the facts, including the fact that the money was being borrowed on the note for the use of the firm of Gray & Lockwood in their jewelry business. When she so signed the note, a contract was

implied or raised on the part of her co-makers to indemnify her, or refund to her the amount she might have to pay in the transaction.   Her right of action against them is not based upon the note she had paid to Farnum, for the note had answered the purpose for which it was drawn, and has been paid and cancelled, and she now holds it only as a voucher to be used in settlement with the other makers for whose accommodation she had signed (Edwards on Bills, 3rd ed., §§ 722, 723, 764).   And her right of action against them is subject to any equities between them, —in other words it has not the characteristics of commercial paper, and does not entitle her, by subrogation or otherwise, to the rights which belonged to Farnum, as holder of the note.

The five other notes held by her, and which make up the rest of her claim, bear date in the years, 1881 and 1882.   In these, she is payee and endorser, and they are signed by Gray & Lockwood with their individual names.   They were all given in renewal of other notes, the originals of which were given some time prior to 1876, when the firm was dissolyed, signed in the firm name, payable to and endorsed by her, to be discounted at the bank for the accommodation of the firm.   The aggregate amount of them being at first more than at present, these original notes, as they became due, were paid in part by other notes of the same parties, which were in turn paid in like manner, until the notes now held by Mrs. Lockwood were paid and taken up by her.   Does she now hold them as joint and several liabilities of the makers, as they, on their face purport to be, or do they still

retain their original character as firm debts of Gray & Lockwood?

In Jackson v. Cornell (1 *Sandf. Ch.*, 348), it was held that an assignment, made by one partner of his individual property, by which he preferred the firm creditor, was fraudulent and void as to his individual creditors.   In Kirby v. Carpenter (7 *Barb.*, 373), where a surviving partner had paid the firm debts, and claimed to be an individual creditor to the amount due him on account of such payments, it was held that the nature of the debts was not changed, that the surviving partner stood in the place of the original creditors.   In Ganson v. Lathrop (25 *Barb.*, 455), the claimants held notes, signed "J. Ganson & Co.," by which the makers jointly and severally promised to pay, etc.   The court held that the claimants were partnership, and not individual creditors.   While these cases do not decide the character to be given the notes in this case, they do show a purpose of the courts to give that character to a debt which it originally had.   In other cases, it is doubted whether it is in the power of the debtor to change the character of the debt to the prejudice of debtors of another class.

I think there can be little doubt but that all of Mrs. Lockwood's claims retain the character of partnership debts, so as to be capable of being enforced against partnership assets, if any existed, and I fail to see how they can at the same time, as against individual creditors, have the character of individual debts;—in the one case, by reason of the implied promise of the individual partners to pay what she.

might suffer by reason of her having signed, for the benefit of the firm, the $2,000 note, and in the other cases by their having renewed old partnership notes, after the dissolution of the partnership, signed in their individual names. I, therefore, conclude that all of Mrs. Lockwood's claim is made up of old debts of the firm of Gray & Lockwood.

At law, the partnership creditor may pursue both the joint and separate estates of the partners for the satisfaction of his debt, which at law is considered both joint and several. On the death of one of the partners, the legal right ceases against the deceased partner, and survives only against the surviving partner. A court of equity will, however, decree to joint (and partnership) creditors satisfaction of their claims, as against the *representatives* of the deceased partner, when, by reason of the insolvency of the firm and of the surviving partner, no other remedy exists (Pope v. Cole, 55 *N. Y.*, 124). But, as against the *individual creditors* of the deceased partner, when the estate of the latter is insufficient to pay both classes of claims, equity gives the individual creditors the prior right. For it is a general rule that partnership debts must be first paid from the partnership assets, and individual debts, in like manner, are to be first paid from the individual assets ; and where there are insufficient partnership assets to pay the partnership debts, the partnership creditors can only look to the surplus of the individual assets, after the individual creditors have been satisfied. In the English courts, an exception has been established in cases where there is no joint estate and no solvent partner ;

—then the joint creditor is not postponed, but is permitted to come in ratably with the individual creditors. But this exception is not recognized by the courts of this State (N. R. Bank v. Stewart, 4 *Bradf.*, 254, and cases there cited; Voorhis v. Childs, 17 *N. Y.*, 354).

The case of Pope v. Cole (*supra*), upon which the counsel for Mrs. Lockwood relies, does not sustain his position, for in that case the effect of insufficient individual assets to pay individual creditors is not discussed. The court there decides what is necessary in order to *maintain* an action against the *representatives* of a deceased partner.

In distributing the assets of the deceased, in the hands of the administrator, the decree will, therefore, provide for the payment of the individual creditors first, in full, and after that, the balance to be distributed *pro rata* among the firm creditors, including Mrs. Lockwood. The expense of the reference allowed in the judgment must, however, be paid in full, before any distribution (Columbian Ins. Co. v. Stevens, 37 *N. Y.*, 536; Shields v. Sullivan, 3 *Dem.*, 296).